**SO ORDERED.**

**SIGNED this 01 day of October, 2007.**

```
                                    _____
                                          JAMES D. WALKER, JR.
                                    UNITED STATES BANKRUPTCY JUDGE
```
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 12 |
| | ) | CASE NO. 07-10557-JDW |
| JAMES L. SAUNDERS, | ) | |
| | ) | |
| DEBTOR. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

For Debtor:      Wesley J. Boyer
                 355 Cotton Avenue
                 Macon, Georgia 31201

For Creditors:   Deena Plaire-Hass
                 Post Office Drawer 71788
                 Albany, Georgia 31708

                 Edgar W. Duskin, Jr.
                 Post Office Drawer 71727
                 Albany, Georgia 31708

For Trustee:     Walter Kelley
                 Post Office Box 70849
                 Albany, Georgia 31708

**MEMORANDUM OPINION**

This matter comes before the Court on CNH Capital America, LLC and Sumter Bank & Trust's objections to confirmation. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(L). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Findings of Fact**

Debtor James Saunders filed a Chapter 12 petition on May 9, 2007. CNH Capital America, LLC and Sumter Bank & Trust objected to confirmation of his plan, alleging, among other things, Debtor is not eligible for Chapter 12 because the majority of his debt cannot be characterized as farm-related debt. The Court held a hearing on the objections on September 13, 2007.

During the hearing the parties stipulated to the relevant facts. Debtor pledged his farm as collateral for business debts unrelated to his farming operation, primarily for debts arising from his ownership of an automobile dealership. Based on Debtor's bankruptcy schedules, he has total debt of $3,248,286. Of that, $1,331,686 was incurred for farming purposes and $1,916,500 was incurred for non-farming purposes, including non-farm business.

The schedules include some disputed and unliquidated claims and some minor errors and omissions. For example, they do not reflect a potential offset Debtor has against a $175,000 debt that was incurred for non-farm purposes. However, even if all the discrepancies and questions are resolved in Debtor's favor, less than 50 percent of his debt can be characterized as farm-

related unless all debt secured by the farmland–regardless of the debt's purpose–is deemed farm-related debt.

After considering the fact and the arguments of the parties, the Court finds Debtor ineligible for Chapter 12 for the reasons that follow.

### Conclusions of Law

Pursuant to § 109(f) of the Bankruptcy Code, "[o]nly a family farmer or family fisherman with regular annual income may be a debtor under chapter 12 ...." 11 U.S.C. § 109(f). The Bankruptcy Code defines a "family farmer," in part, as an

> individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $3,237,000 and <u>not less than 50 percent of whose aggregate noncontingent, liquidated debts</u> (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, <u>arise out of a farming operation</u> owned or operated by such individual or such individual and spouse ....

11 U.S.C. § 101(18)(A) (emphasis added).

The key question in this case is whether loans secured by farmland used to operate a car dealership constitute debt "aris[ing] out of a farming operation." A small number of courts have considered the issue of when debt is farm-related. The majority have focused on the purpose of the debt–whether it was incurred and the proceeds used for the farming operation.

The court in <u>In re Kan Corp.</u>, 101 B.R. 726 (Bankr. W.D. Okla. 1988), faced facts similar to those in Debtor's case and looked to the use of the loan to determine whether the debt was farm-related. <u>Id.</u> at 727. The debtor obtained an interim loan from a bank to finance the purchase of a beer distributorship. The loan was partially secured by debtor's farmland. The

debtor later obtained permanent financing from an insurance company and continued to offer the farmland as collateral. The debtor used the proceeds from the insurance company loan to repay the bank and extinguish its mortgage on the farmland. When the debtor defaulted on the new loan, it agreed to foreclosure on the farmland in exchange for a release of liability on personal guarantees made by the debtor's officers. The debtor filed a Chapter 12 petition the same day it made the agreement. Id. at 726-27.

The court held the insurance company loan "did not 'arise out of farming operations.'" Id. at 727. It set forth a test for farm-related debt as follows: "Whether a debt incurred from a loan 'arises out of farming operations' is determined by the use made of the loan proceeds." Id. In this case, the original loan was use to purchase a beer distributorship and the second loan was used to pay off the first loan. The farmland was only implicated because the debtor used it as collateral. Id. The court refused to "characterize loans by the nature of the collateral or the motive of the debtor, rather than the more objective criteria of the use made of the loan proceeds." Id. To qualify as farm debt, "the proceeds of the loan must in some way be directly applied to or utilized in the farming operation." Id.

The court in Otoe County National Bank v. Easton (In re Easton), 883 F.2d 630 (8th Cir. 1989) also focused on the "purpose to which the borrowed funds have been put" to determine whether the debt arose from a farming operation. Id. at 636. In that case, the debtors' grandson obtained a loan for a hog-raising operation on his own land. The debtors guaranteed the loan and offered their farmland as collateral. Id. at 631. The court rejected an analysis that would treat any loan secured by farmland as farm debt, stating, "That approach is not faithful to the language of the statute because it would permit inclusion toward satisfaction of the minimum debt

requirement debt incurred by an owner of land without regard to the connection between the debt and the debtor's own farming activity." Id. at 636. Because the debt had no relation to the debtors' farming operation, the court concluded it was not farm debt. Id. at 636-37.

In In re Marlatt, 116 B.R. 703 (Bankr. D. Neb. 1990), the court followed Easton, stating, "for a debt to arise out of a farming operation, there must be a connection between the debt and the debtor's farming activity." Id. at 705 (citing Easton, 883 F.2d at 636). Prior to filing for bankruptcy, the debtor and his wife divorced. The debtor was ordered to pay her $130,000, secured by a lien on all his real estate, including farm property. Id. To decide whether the divorce debt arose from the debtor's farming operation, the court "examine[d] the substance of the underlying transaction." Id. It concluded that the farm property on which the debtor's ex-wife had a lien was a significant part of the marital estate, and the debt was part of the division of that property. Id. at 706. "The underlying purpose of the debtor's payment to his former spouse was to allow the debtor to retain the farming operation." Id. Thus, the debt was "'inescapably woven'" with the farming operation and came within the scope of farm debt. Id. Contra Aud v. Van Fossan (In re Van Fossan), 82 B.R. 77, 80 (Bankr. W.D. Ark. 1987) (debtor's obligation to ex-wife under divorce decree was not farm-related debt because it "was not incurred as a result of a risk or activity involved in a farming operation ....").

The court in In re Douglass, 77 B.R. 714 (Bankr. W.D. Mo. 1987), articulated a similar test: "it is (or should be) the reason or purpose for which the debt was incurred coupled with the use to which the borrowed funds were put that should be the criteria to determine whether the debt 'arises out of a farming operation.'" Id. at 715. The debtors in that case owed a service station that they offered as collateral for a loan, the proceeds of which they used to keep their

farm running.  Id.  Because the debt was incurred for farming purposes and actually used for farming operations, the court found it to be farm-related debt.  Id.

Faced with somewhat different circumstances, the court in In re Rinker, 75 B.R. 65 (Bankr. S.D. Iowa 1987), relied on the subject matter of the proceeding from which the debt resulted to determine whether it was farm debt.  Id. at 68.  The debt arose out of a will dispute. The debtor's parents bequeathed their farmland in equal shares to their four children.  After the death of his father, the debtor contracted with his mother to purchase most of the farmland. Upon the mother's death, the sale contract was ruled invalid by a probate judge.  The debtor appealed the ruling.  Before the appeal was decided, the debtor reached a settlement with his siblings–three sisters.  As part of the settlement, the sisters agreed to sell their share of the farmland to the debtor.  The debtor gave each a down payment and a mortgage on the farmland for the remaining amount due.  Six years later, the debtor filed a Chapter 12 petition; he still owed $431,300 to his sisters.  At the time of filing, the debtor had been farming the land at issue for 30 years.  Id. at 66-67.

To determine whether the debt to his sisters arose from a farming operation, the court had to "examine the nature of the questioned activity, here the settlements, and their relation to the [debtor's] farming operation."  Id. at 68.  The mere fact that the debt resulted from a settlement did not preclude it from arising from a farm operation.  Id.  The court found a direct link between the basis of the lawsuit and subsequent settlement and the farming operation.  The siblings were fighting over the farmland, which was necessary to the debtor's farming operation, and the debtor settled the suit to preserve his farming operation.  Id.  In such circumstances, the relationship between the subject of the settlement and the 'farming operation' ... is clear and direct."  Id.

Thus, the debt owed to the sisters was farm debt. Id.

In re Roberts, 78 B.R. 536 (Bankr. C.D. Ill. 1987), also dealt with inherited farmland. In Roberts, the debt in question was an estate tax on the debtor's inheritance. The court found the taxes were farm-related debt because the debtor had to pay them to keep the farm. Id. at 537. "But for the payment of the estate taxes, there would be no farm. The payment of estate taxes is clearly 'inescapably interwoven' with the farming operation." Id. Citing Rinker, the court found a "direct link between the estate taxes and the farming activity." Id. at 538.

In In re Reak, 92 B.R. 804 (Bankr. E.D. Wis. 1988), the court described the test applied in Roberts and Rinker as a "but for" test.[1] Id. at 806. In each case, but for the debt, there would be no farm. Id. at 805-06. In Reak, the debtor and his wife borrowed money to purchase farmland, giving the lender a mortgage. When the couple divorced, the divorce decree required the debtor take full responsibility for the joint debt and hold his ex-wife harmless on it. Id. at 805. The court applied the "but for" test to find the debt was "'inescapably interwoven' with the farming operation." Id. at 806. If not for the original loan, there would be no farm, and the divorce decree did nothing to alter the original debt. Id. Therefore, the court concluded the debt was farm-related.

Based on the reasoning of other courts to consider this issue, the Court concludes that to "arise out of a farming operation" the purpose of a debt must have some connection to the debtor's farming activity. Merely using farmland as collateral for a debt that has no other relation to the farming activity will not suffice. In this case, Debtor used the proceeds of the

---

[1] The court also referred to In re Armstrong, 812 F.2d 1024 (7th Cir. 1987), as creating a "but for" test. However, the issue in Armstrong related to farm income, not farm debt.

loans at issue for business reasons, primarily operating a car dealership–an enterprise wholly unrelated to farming. Therefore, the debt cannot be said to "arise out of a farming operation" and cannot count towards the 50 percent farm-related debt requirement for Chapter 12 eligibility.

Because the business debt secured by the farm cannot be treated as farm-related debt, Debtor's farm-related debt consists of less than half of his total debt. Consequently his is not eligible for Chapter 12. CNH Capital and Sumter Bank's objections as to Debtor's eligibility will be sustained.

An order dismissing this case will be entered not sooner than seven calendar days from the date of entry of this opinion. This delay will afford Debtor a brief time to consider whether to attempt to convert this case to a case under another chapter. By providing a period of time for consideration of such a possibility, the Court does not intend to opine that such a conversion would be permissible as a matter of law.

END OF DOCUMENT